J-S43033-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ERIN LYNN MAPLES | : | |
| | : | |
| Appellant | : | No. 1778 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 21, 2019
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s):  CP-03-CR-0000431-2018

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    FILED OCTOBER 14, 2020

Appellant, Erin Lynn Maples, appeals from the judgment of sentence entered in the Armstrong County Court of Common Pleas, following her bench trial convictions for driving under the influence of alcohol ("DUI")—general impairment, operating a motor vehicle without required financial responsibility, and failure to drive at a safe speed.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On the night of March 30, 2018, and in the early morning hours of March 31, 2018, Appellant consumed alcohol at both a bar and her home.  On her way to work later on the morning of March 31, 2018, Appellant drove her motor vehicle off the road and crashed.  The Commonwealth subsequently charged

_____

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 1786(f), and 3361, respectively.

Appellant with DUI—general impairment, operating a motor vehicle without required financial responsibility, failure to drive at a safe speed, and careless driving. Appellant proceeded to a bench trial on August 14, 2019.

In its opinion, the trial court accurately and concisely summarized the trial evidence as follows.

> On the evening of March 30, 2018, [Appellant], along with several friends, were drinking at a bar in East Brady, Clarion County, Pennsylvania. [Appellant] drank several beers and shots of liquor at the bar and left at approximately 12:00 midnight. [Appellant] admitted to being intoxicated when she left. After walking a short distance home, she consumed another beer and went to bed around 2:30 a.m.
>
> Approximately three and one-half hours later, or approximately 6:00 a.m., [Appellant] awoke for work. She left her residence at approximately 6:30 a.m., traveling westbound along State Route 68 in Bradys Bend Township, Armstrong County. At the time, [Appellant] was employed in Butler, Pennsylvania, where she was expected to arrive by 7:00 a.m. Approximately five minutes after leaving her residence, [Appellant]'s vehicle slid off of Route 68 and hit an embankment. Upon impact, [Appellant] cut her lip when her face hit the steering wheel. [Appellant] secured a ride from the accident scene to the home of Charles Leroy, one of the friends with whom she had been drinking the prior evening. After she arrived at Leroy's residence, [Appellant] and Leroy returned to the accident scene in Leroy's vehicle. Leroy removed [Appellant]'s vehicle from the embankment, and the two then returned to Leroy's residence.
>
> [Appellant] went with Leroy into his garage. [Appellant] and Leroy both testified that Leroy then gave [Appellant] vodka to wash out her mouth, which she did. They both also testified that [Appellant] then poured approximately four to five more shots of vodka into a cup and drank it.[7] Leroy then transported [Appellant] to Armstrong County Memorial Hospital ("ACMH") for treatment. Around 7:45 a.m., Trooper Travis M. Trimbur of the Pennsylvania State Police ("PSP") Kittatinning Barracks, was dispatched to ACMH.

Upon his arrival at ACMH, Trooper Trimbur went to the emergency unit where [Appellant] was being treated for the injury to her lip. Trooper Trimbur waited approximately 25 minutes while [Appellant] received treatment before speaking with her. Leroy was present at the hospital, and Trooper Trimbur spoke briefly with him about what had happened. Neither Leroy nor [Appellant] disclosed at that time that [Appellant] had [drunk] vodka in Leroy's garage.

[7] Leroy testified that [Appellant] "chugged" the vodka from the cup. [Appellant] testified that she drank it over a period of five to ten minutes.

During his conversation with [Appellant], Trooper Trimbur noticed a smell of alcohol emanating from her person and that her eyes were bloodshot. He then asked [Appellant] whether she had been drinking. She responded that she had been drinking beer and shots of liquor the night before, but had stopped drinking before she went to bed around 2:30 a.m. She did not indicate that she had been drinking after the accident and did not mention that she had washed her mouth with or [drunk] vodka at Leroy's home. Trooper Trimbur then performed the horizontal gaze nystagmus ("HGN") test on [Appellant] and administered a preliminary breath test ("PBT"). Trooper Trimbur placed [Appellant] under arrest and transported her from ACMH to the Kittatinning PSP barracks, where she underwent an intoxilyzer breath test at 9:15 a.m. At no time from the point she left ACMH to the time she underwent the intoxilyzer test did [Appellant] consume alcohol. The test indicated a BAC of 0.198 percent.

(Trial Court Opinion, filed January 7, 2020, at 2-4) (internal record citation omitted). The trooper who administered the intoxilyzer test to Appellant at the barracks testified that Appellant "seemed to be very upset and very apologetic for her being there." (N.T. Trial, 8/14/19, at 44-45). After Appellant's release from custody, "Trooper Trimbur then returned to the scene of the accident, where he observed skid marks on the road at the location

where he believed [Appellant] had crashed." (Trial Court Opinion at 4).

Immediately following trial, the court convicted Appellant of DUI—general impairment, operating a motor vehicle without required financial responsibility, and failure to drive at a safe speed. The court sentenced Appellant on November 21, 2019, to an aggregate term of five (5) days to six (6) months' incarceration, plus costs and fees.[2] On December 3, 2019, Appellant filed a timely notice of appeal. The court ordered Appellant on December 4, 2019, to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal; Appellant timely complied on December 19, 2019.

Appellant raises one issue for our review:

> Did the trial court err in finding [Appellant] guilty of Driving Under the Influence of Alcohol or Controlled Substance—General Impairment, 75 Pa.C.S.A. § 3802(a)(1), where the Commonwealth failed to introduce sufficient evidence to prove beyond a reasonable doubt that [Appellant] operated her motor vehicle at a time when, due to the consumption of a sufficient amount of alcohol, she was rendered incapable of safely driving[?]

(Appellant's Brief at 8).

Appellant argues the trial evidence was insufficient to support her conviction for DUI. Appellant insists the Commonwealth failed to prove that at the time of the accident she was operating her vehicle while under the

_____

[2] On November 22, 2019, the court corrected typographical errors in the original sentencing orders, which had mistakenly indicated that Appellant had pled guilty to operating a motor vehicle without required financial responsibility and failure to drive at a safe speed.

influence of alcohol. Appellant claims the results of the intoxilyzer test are incredible. Specifically, Appellant contends that her consumption of five beers and two shots between 10:00 p.m. and midnight the night before the crash could not have caused her to have a BAC of 0.198 percent at approximately 9:00 a.m. the next morning. Appellant maintains the Commonwealth introduced no evidence disputing that she had consumed four to five shots of vodka after the crash and before going to the hospital. As well, Appellant avers the evidence showed she lost control of and crashed her vehicle because her car slid on black ice, not because she was intoxicated. Appellant concludes this Court should reverse her DUI conviction and vacate the judgment of sentence. We disagree.

When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we analyze:

> [W]hether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable a reasonable [fact finder] to find every element of the crime beyond a reasonable doubt. See Commonwealth v. Cousar, 593 Pa. 204, 217, 928 A.2d 1025, 1032 (2007)[, cert. denied, 553 U.S. 1035, 128 S.Ct. 2429, 171 L.Ed.2d 235 (2008)].... In applying this standard, we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. See id., 928 A.2d at 1032–33; Commonwealth v. Chmiel, 585 Pa. 547, 574, 889 A.2d 501, 517 (2005)[, cert. denied, 549 U.S. 848, 127 S.Ct. 101, 166 L.Ed.2d 82 (2006)].

Commonwealth v. Reed, 605 Pa. 431, 436, 990 A.2d 1158, 1161 (2010), cert. denied, 562 U.S. 1020, 131 S.Ct. 549, 178 L.Ed.2d 402 (2010) (internal citation omitted).

Section 3802 of the Motor Vehicle Code provides:

§ 3802. Driving under influence of alcohol or controlled substance

(a) General impairment.—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

*    *    *

75 Pa.C.S.A. § 3802(a)(1).

"Subsection (a)(1) is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered [an accused] incapable of safe driving." Commonwealth v. Loeper, 541 Pa. 393, 402-03, 663 A.2d 669, 673-74 (1995).

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary....

* * *

> Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

Commonwealth v. Segida, 604 Pa. 103, 115-16, 985 A.2d 871, 879 (2009).

Instantly, at the conclusion of trial the court explained on the record its rationale for convicting Appellant of DUI—general impairment:

> Well, much of this depends on credibility of the issue about drinking the vodka in the garage. I can't say that this is impossible, but I don't find that to be sufficiently credible to create a reasonable doubt. The reasons why; first of all, the idea of having an injured mouth and wanting to drink vodka and a lot of vodka, doesn't seem to me to make any sense. As [the prosecutor] pointed out in his questioning, it would be quite painful to put vodka into an open wound.
>
> Not only that; even if I were to believe that [Appellant] rinsed her mouth out or even had a shot, [Appellant] is asking me to find she got herself to two and a half times the legal limit by drinking that vodka. I don't find that makes any sense. To top it off, neither [Appellant] nor Mr. Leroy saw fit to mention anything about that, even as [Appellant] was being taken into custody and placed under arrest for DUI. That does not seem to make any sense that neither one of them might possibly bring up the fact that she had a coffee cup full of vodka after she was driving.
>
> Also the fact that [Appellant] was apologetic when she was submitting to the breathalyzer, I think is consistent with the fact that she had knowledge of her guilt and the vodka story came up after the fact. While I can't conclude that it is impossible, it doesn't impress me as being sufficient to overcome the Commonwealth's case.

(N.T. Trial at 75-76).

Additionally, in its Rule 1925(a) opinion, the trial court addressed

- 7 -

Appellant's sufficiency claim as follows:

> Although it is true that no one observed the accident or [Appellant]'s condition when it occurred, there clearly is sufficient evidence in the record, which the [c]ourt found to be credible, establishing that [Appellant] was intoxicated at the time she drove. It is undisputed in the record that [Appellant] was drinking and intoxicated when she left the bar around midnight. She then walked home and kept drinking until sometime before she went to bed at 2:30 a.m. It also is undisputed that she drove her vehicle and slid off the road at approximately 6:30 a.m. When Trooper Trimbur began speaking with [Appellant] in the emergency room sometime after 8:00 a.m., he noticed signs of impairment, including a smell of alcohol on [Appellant]'s person and her bloodshot eyes. He also administered the horizontal gaze nystagmus test and a PBT, both of which indicated intoxication. After she was taken into custody, [Appellant] underwent an intoxilyzer breath test, which indicated a BAC of 0.198 percent. These facts, considered as a whole, are clear and sufficient circumstantial evidence establishing that [Appellant] was intoxicated to a degree that rendered her incapable of driving safely when she drove and wrecked her car at approximately 6:30 a.m.
>
> With regard to [Appellant]'s and Leroy's testimony that [Appellant] drank approximately five shots of vodka after returning to Leroy's residence, the [c]ourt found this testimony to be not credible and stated the reasons for so finding on the record. The [c]ourt did not err in discrediting this testimony, which it continues to conclude was insufficient to create reasonable doubt regarding [Appellant]'s intoxication at the time she drove her vehicle.

(Trial Court Opinion at 6-7) (internal citations omitted). We agree with the

trial court's rationale.

The trial testimony established the indicia of intoxication necessary for

the court as factfinder to conclude that Appellant was unable to drive safely

at the time she crashed her vehicle. See Segida, supra; 75 Pa.C.S.A. §

3802(a)(1). The trial court was free to discredit Appellant's and Mr. Leroy's testimony that she drank vodka in Mr. Leroy's garage after the accident but before going to the hospital. See Reed, supra. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, sufficient evidence supported Appellant's DUI—general impairment conviction. See id. Accordingly, Appellant's sufficiency of the evidence claim fails, and we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2020